1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

AHADI ABU-AL MUHAMMAD    )    NO. EDCV 23-1260-VBF (KS)
*also known as*                          )
ONOFRE TOMMY SERRANO,   )
                     **Plaintiff,**           )    **MEMORANDUM AND ORDER**
                                               )    **DISMISSING THE FIRST AMENDED**
          v.                                   )    **COMPLAINT WITH LEAVE TO AMEND**
                                               )
COUNTY OF RIVERSIDE et al.,  )
                     **Defendants.**          )
_____ )

**INTRODUCTION**

On June 23, 2023, Ahadi Abu-Al Muhammad (also known as Onofre Tommy Serrano) ("Plaintiff"), who is currently in custody at North Kern State Prison and proceeding *pro se*, filed a civil rights complaint alleging constitutional violations arising out of his 2018 arrest (the "Complaint"). (Dkt. No. 1.) On March 14, 2024, the Court dismissed the Complaint and granted Plaintiff thirty days leave to file First Amended Complaint ("FAC"). (Dkt. No. 16.) Because Plaintiff did not timely file his FAC, the Court issued an Order to Show Cause ("OSC") on April 29, 2024 directing Plaintiff to demonstrate why the Court should not recommend that the action be dismissed under Federal Rules of Civil Procedure 41(b). (Dkt.

No. 18.)  After multiple extensions (*see* Dkt. Nos. 22-23, 25-26, 27-28), Plaintiff filed a deficient FAC on October 29, 2024.  (Dkt. No. 29.)  The Court ordered Plaintiff to re-file the FAC correcting the deficiencies by November 11, 2024.  (Dkt. No. 31.)  When Plaintiff failed to meet that deadline, the Court issued another OSC directing Plaintiff to demonstrate why the Court should not recommend that the action be dismissed by December 26, 2024.  (Dkt. No. 32.)  Plaintiff filed the corrected FAC on December 6, 2024.[1]  (Dkt. No. 35.)

In the FAC, Plaintiff again sues the County of Riverside ("County"); City of Riverside ("City"); Riverside Police Department ("RPD"); Riverside Community Hospital ("RCH"); Riverside Police Personnel Officers M. Rardin ("Rardin"), V. Schmitz ("Schmitz"), C. Carmona ("Carmona"), and W. Ruiz ("Ruiz") and Sergeants Simmons ("Simmons") and Chinchilla ("Chinchilla") (collectively "Officer Defendants") in their official and individual capacities; Riverside Community Hospital personnel, Dr. Christensen and Nurse Jane Roe No.1 (collectively "Hospital Defendants") in their official and individual capacities; and Doe Nos. 1 through 10.  (Dkt. No. 35 at 2-5.)  Plaintiff also adds the Mayor, City Attorney, City Manager, and Chief of Police for the City of Riverside and the Riverside County Sheriff.  (*Id.* at 2-3, 13.)  Plaintiff alleges that Defendants violated his civil rights during the events surrounding his arrest in April 2018.  (*See id.* at 6-14.)

For the reasons outlined below, the Court finds that the FAC contains several fatal defects and must be dismissed.[2]  However, because it does not appear that amendment would be futile, the Court also concludes, in the interest of justice, that leave to amend is appropriate for some of Plaintiff's claims.

---

[1] Plaintiff filed another document entitled "First Amended Complaint" on February 5, 2025.  (Dkt. No. 40.)  Because this document is virtually identical to Plaintiff's earlier filed FAC, the Court maintains the FAC filed on December 6, 2024 (Dkt. No. 35) as the operative pleading.

[2] Magistrate judges may dismiss a complaint with leave to amend without approval of the district judge.  *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

1
2

### STANDARD OF REVIEW

3
4     Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a trial court may dismiss a
5     claim *sua sponte* and without notice "where the claimant cannot possibly win relief." *Omar*
6     *v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Baker v. Director, U.S.*
7     *Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (adopting Ninth Circuit's position in
8     *Omar* and noting that in such circumstances, a *sua sponte* dismissal "is practical and fully
9     consistent with plaintiffs' rights and the efficient use of judicial resources"). A court's
10    authority in this regard includes *sua sponte* dismissal of claims against defendants who have
11    not been served and defendants who have not yet answered or appeared. *See Abagnin v.*
12    *AMVAC Chemical Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008); *see also Reunion, Inc. v.*
13    *F.A.A.*, 719 F. Supp. 2d 700, 701 n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants
14    have not appeared and filed a motion to dismiss is no bar to the court's consideration of
15    dismissal of the claims against them for failure to state a claim upon which relief can be
16    granted, given that a court may dismiss any complaint *sua sponte* for failure to state a claim
17    for which relief can be granted pursuant to Rule 12(b)(6).").

18    In determining whether a complaint should be dismissed at screening, the Court applies
19    the standard of Rule 12(b)(6): "A complaint must contain sufficient factual matter, accepted
20    as true, to state a claim to relief that is plausible on its face." *Rosati v. Igbinoso*, 791 F.3d
21    1037, 1039 (9th Cir. 2015) (internal quotation omitted). Therefore, a plaintiff's factual
22    allegations must be sufficient for the court to "draw the reasonable inference that the defendant
23    is liable for the misconduct alleged." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011)
24    (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)
25    ("Factual allegations must be enough to raise a right to relief above the speculative level on
26    the assumption that all of the complaint's allegations are true.").

27
28    \\

3

When a plaintiff appears *pro se* in a civil rights case, courts must construe the pleadings liberally and afford the plaintiff the benefit of any doubt.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").  However, in giving liberal interpretation to a *pro se* complaint, the court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), and the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the court finds that a *pro se* complaint fails to state a claim, the court must give the *pro se* litigant leave to amend the complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Akhtar*, 698 F.3d at 1212 (internal quotation omitted).  However, if amendment of the pleading would be futile, leave to amend may be denied.  *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend, [a]nd the district court's discretion in denying amendment is particularly broad when it has previously given leave to amend.").

## THE FIRST AMENDED COMPLAINT

In the FAC, Plaintiff alleges as follows.  On April 14, 2018, Plaintiff, a resident of Texas and doing business in California, was approached by Officer Rardin in his patrol vehicle in a strip mall located in Riverside, California.  (Dkt. No. 35 at 5-6.)  "Defendant Rardin parked, exited, approached, and abruptly grabbed Plaintiff by the hand and arm, without cause or warning, and began to twist and pull, inflicting unbearable pain and discomfort." (*Id.* at 6.) Plaintiff "peacefully left the scene, and Defendant Rardin gave chase." (*Id.* at 7.) "Defendant

Rardin caught up with Plaintiff in the grocery store parking lot of Maxi Foods . . . [and] without cause or warning wrapped both arms around Plaintiff's upper torso and frantically hip tossed Plaintiff, slamming him to the pavement thereafter jumping onto Plaintiff's back and pummeling about his head, neck, face, back, and ribs." (*Id.* at 7-8.) "Defendant(s) Simmons and Schmitz jumped onto Plaintiff's back and pummel[]ed about his head, neck, face back and ribs." (*Id.* at 8.) "Subsequently, Plaintiff was placed in handcuffs." (*Id.*) Defendant Schmitz seized a firearm, jewelry, cellphones, identification, and other personal and business-related items from Plaintiff. (*Id.*)

Following the arrest, Defendant officers transported Plaintiff to Riverside Community Hospital for medical treatment. (*Id.* at 9.) While at RCH, "Plaintiff made aware his kidney and neurological condition to Defendant nurse Jane Roe #1, and Dr. Christensen failed and refused to provide Plaintiff with necessary medical equipment, inter alia, i.e., a urinal but cleared Plaintiff medically." (*Id.* at 10.) "Plaintiff also informed Defendant Rardin, Ruiz, Carmona, Schmitz, and Chinchilla that he needed to use the restroom," to which "Defendant Chinchilla taunted Plaintiff in reply . . . to 'piss your pants.'" (*Id.*) Defendant officers then removed Plaintiff from the hospital and "violently knocked Plaintiff to the asphalt, where he was kicked and struck with closed fist, while handcuffs was [sic] tighten around Plaintiff's wrist cutting off blood circulation, in addition to being placed in shackles around the ankles also extremely tight, thereafter hog tied as the handcuffs and shackles was connected while Plaintiff lay on his stomach." (*Id.* (errors in original).)

On April 15, 2018, "Defendant Ruiz transported Plaintiff to the jail where he was compelled to submit to fingerprinting and photographing of his person . . . [and] was thereafter booked into Robert J. Presley detention center." (*Id.* at 11.) 'Defendants Rardin, Schmitz or Simmons between 4/14/18 through 4/17/18 and during all the time intervening did not take Plaintiff before any magistrate for a combined [probable cause determination] and arraignment in the County in which he was so detained . . . ." (*Id.* at 12.)

5

Based on the facts alleged, Plaintiff asserts seven causes of action against Defendants:

1) Unnecessary and excessive use of force against the Officer Defendants;

2) Deliberate indifference to serious medical needs against the Officer Defendants and Hospital Defendants;

3) Denial of prompt judicial determination of probable cause against Officers Rardin and Schmitz and Sergeants Simmons and Chinchilla;

4) Unlawful prosecution and/or arrest, search, detention in disregard of clear legal standards against Officers Rardin and Schmitz;

5) Municipal liability for a policy, practice, or custom of excessive use of force against the City and Officer Defendants;

6) Municipal liability for a policy, practice, or custom of failing to train and supervise its personnel against the City, RCH, and the Hospital Defendants; and

7) Municipal liability for policies, practices, and customs related to prompt probable cause determinations and the training and supervision of personnel against the City, the County, Officers Rardin and Schmitz, and Sergeants Simmons and Chinchilla.

(*See id.* at 14-28.)

Lastly, Plaintiff requests the following relief:

1) A declaratory judgment that the policies, practices and acts complained of are illegal and unconstitutional pursuant to 28 USC §§ 2201 and 2202, and Rule 57 of the Fed.R.Civ.Proc.;

2) A preliminary and permanent injunctive relief pursuant to 28 USC § 2283:
   1. preventing Defendant City, RPD from employing the Defendant Officers';

6

 2. preventing Defendant City, RCH from employing Defendants RN Jane Roe #1 and Dr. Christensen; and

 3. ordering Defendant City, RPD to release and return Plaintiff's personal property seized during his arrest.

3) Attorney's fees, costs and expenses pursuant to 42 USC § 1988 and 28 USC § 2412;

4) Compensatory damages in the amount[t] of twenty one million ($21,000,000.00) dollars;

5) Punitive or exemplary damages in the amount of ten million ($10,000,000.00) dollars; and

6) Award such other and further relief as this Court may deem appropriate.

(*Id.* at 28-29.)


# DISCUSSION

## I.    Claims Against Municipal Defendants

Plaintiff sues four municipal entities—the City of Riverside, the County of Riverside, the Riverside Police Department, and Riverside Community Hospital—as well as each of the individual defendants in their official capacities under Section 1983.  (Dkt. No. 35 at 2-5.)

In Count Five, Plaintiff alleges:

Defendant City, under color of law, intentionally and with complete and deliberate indifference for Plaintiff's rights, authorized, permitted, and tolerated a custom and practice of excessive use of force by members of the RPD . . . by:

7

a) inadequate supervision of the training and conduct of Defendant officers';

b) failing to train Defendant officers' in the disproportion to the amount of force proper under the circumstances;

c) failing to properly discipline, restrict and control employees, including Defendant officers' and Doe/Roe, known to be irresponsible in their dealings with citizens of the community;

d) failing to take adequate precaution in the hiring, promotion or retention of police personnel, including Defendant officers' and Doe/Roe;

e) failing to enforce the laws of the State of California and the provisions of the Constitution of the USA concerning use of force by members of the RPD while making an arrest;

f) issuance of vague, confusing and contradictory policies concerning the use of force that are inconsistent with the requirements of the Fourth and Fourteenth Amendments of the Constitution of the USA;

g) failing to forward to the Office of the District Attorney of the Court evidence of criminal acts committed by police personnel;

h) failing to establish and/or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to such complaints with bureaucratic power and official denials calculated to mislead the public;

i) appoint, promote, train, and supervise a member of the RPD to enforce the laws in the police manual, the State of California and who would protect the Constitutional rights of the people of Defendant City; and

j) permitting the policy, practice and /or custom of using unreasonable force to exist and to be followed by the RPD, and Defendant officers', thereby proximately causing the deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

(*See id.* at 19-20.)

In Count Six, Plaintiff alleges:

Defendant RCH failed to train and supervise its personnel including the individually named Defendants Nurse Jane Roe #1 and Dr, Christensen, so as to prevent the deliberate indifference to serious medical needs and/or unreasonable seizure upon patient/prisoner to whom they would come in contact during arrest. . . . Defendant RCH, under color of law and the authority of municipality, intentionally and with complete deliberate indifference for Plaintiff's rights, caused Plaintiff to be deprived of his Constitutional rights by:

a) inadequate supervision of the training and conduct of Defendant RCH personnel;

b) failing to adhere to the laws of the State of California and the provisions of the Constitution of the USA (i.e., providing care for serious medical needs, personal safety while in joint care/custody with police officers, e.g., unnecessary use of force by members of the police while on RCH property, etc.)[;]

c) abdicating to promulgate rules and regulations specifically providing, e.g., that RCH medical personnel professional ad ethical obligations to make independent preparatory judgments supersede RPD directives of custody and security, which must necessarily yield when in direct conflict of treatment and/or an initial evaluation with care and skill[;]

d) failing to take adequate precautions in the hiring, promotion, and retention of RCH personnel including specific Defendants Nurse Jane Roe #1 and Dr. Christensen; and,

e) failing to properly discipline, restrict and control RCH personnel, including

Defendants Dr. Christensen and Nurse Jane Roe #1.

(*See id.* at 22-23.)

Lastly, in Count Seven, Plaintiff alleges:

Defendant City and County, under the color of law and the authority of municipality intentionally and with complete and deliberate indifference for Plaintiff's rights, caused Plaintiff to be deprived of his Constitutional rights by:

a)      failing to supervise properly the training and conduct of Defendant Officers;

b)      failing to enforce the laws of the State of California and the provisions of the Constitution of the USA concerning prompt [probable cause determinations] by members of the police force while making a warrantless arrest;

c)      failing to properly discipline, restrict and control employees, including Defendant Officers and Doe/Roe, known to unlawfully detain, falsely arrest or otherwise falsely imprison the citizens of the community;

d)      abdicating to promulgate rules and regulations specifically providing for immediate release from physical custody of the arrestee, such as Plaintiff, in the event of a failure to promptly obtain a [probable cause determination] within forty-eight (48) hours;

e)      failing to take adequate precaution in the hiring, promotion or retention of police personnel, including Defendant Officers ad Doe/Roe; and,

f)      failing to forward to the Officer of the District Attorney of the County evidence of false arrest/imprisonment or unlawful detention committed by police personnel.

(*See id.* at 25-26.)

## A. Legal Standards

A Section 1983 claim against a municipal entity requires the plaintiff to show that a constitutional violation was committed pursuant to a "formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The plaintiff must also show that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Further, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and not against the official personally. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation and citations omitted).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995), as amended on denial of reh'g (Jan. 12, 1996) ("Proof of random acts or isolated events is insufficient to establish custom."). "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014); *see also Benavidez v. County of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) (finding that "one instance of County employees violating

the constitutional rights of parents and children is insufficient to demonstrate a custom supporting *Monell* liability"). To be sufficient, *Monell* claims based on a custom or practice must allege facts reflecting "repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Navarro*, 72 F.3d at 714.

Supervisory personnel are generally not liable under Section 1983 for the actions of their employees under a theory of respondeat superior unless a causal link between the supervisor and the claimed constitutional violation is specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To show a prima facie case of supervisory liability, a plaintiff must allege facts indicating that supervisory defendants either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B. Analysis**

*1. Failure to Train*

Plaintiff has not alleged facts sufficient to raise a plausible inference that Plaintiff may be entitled to relief on his allegations that the municipal defendants had unconstitutional policies or customs regarding training. To hold the municipal defendants liable for the underlying constitutional violation on a failure to train theory, Plaintiff must allege facts that show that the municipal defendants chose a training policy that was inadequate to prevent the constitutional violation and that in selecting this policy the municipal defendants were deliberately indifferent to the constitutional rights of individual citizens. *Benavidez*, 993 F.3d 1134, 1153; *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing

*Canton*, 489 U.S. at 388) ("Failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."); *Harris*, 489 U.S. at 390 (finding *Monell* liability where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").

Here, Plaintiff offers no facts whatsoever about the municipal defendants' training programs, much less that any such programs were inadequate or deficient.  In fact, the only factual allegations Plaintiff includes concern acts of the individual Defendants towards Plaintiff himself, which are insufficient to show any deliberate or conscious *policy choice* by the municipal defendants in training the individual defendants.  *See Canton*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Additionally, Plaintiff's factual allegations describe only single incidents with the Officer Defendants and Hospital Defendants without identifying any purportedly deficient training policy.  *Nelson v. City of Fairfield Police Dep't*, No. 2:22-cv-01619-DJC-DB, 2024 U.S. Dist. LEXIS 123030, at *9 (E.D. Cal. July 12, 2024) ("Without any facts supporting the existence of an unconstitutional training program, the Court cannot infer from the single instance of misconduct alleged in the [FAC] that such a policy exists, or that the policy could be unconstitutional."); *Hyde v. City of Willcox*, 23 F.4th 863, 874-75 (9th Cir. 2022) (holding that while a municipality's deliberate indifference to the "obvious potential" for violation of federal rights can be inferred from a single incident, a plaintiff must still make a factual showing about the deficiencies in a local government's training program because "an inadequate training policy itself cannot be inferred from a single incident").

Plaintiff also fails to articulate any factual allegations that support an inference that the municipal defendants had actual or constructive notice that any alleged defect in training at issue was substantially certain to result in the alleged violation of Plaintiff's constitutional rights. *See Harris*, 489 U.S. at 396 (stating that a Section 1983 complaint must include specific factual allegations that support an inference that policymakers did not correct the deficiency in training even though "the need for more or different training [was] obvious, and the inadequacy so likely to result in the violation of constitutional rights").

Thus, Plaintiff has not alleged sufficient facts for the Court to infer the municipal defendants' training was deficient based solely on the constitutional violation alleged. Nevertheless, the Court will allow Plaintiff one further opportunity to amend this claim.

## 2. Remaining Policy, Practice, or Custom Claims

Plaintiff's remaining allegations regarding the municipal defendants' policies and customs regarding supervision, hiring, promotion, and discipline are similarly deficient.  To start, Plaintiff fails to identify any *specific* policy or custom regarding supervision, hiring, promotion, and discipline that would support his claims against the City, County, RPD, or RCH.  *See Gordon v. County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)) ("An unconstitutional policy need not be formal or written to create municipal liability under Section 1983; however, it must be 'so permanent and well settled as to constitute a custom or usage with the force of law.'"). Moreover, Plaintiff's factual allegations all pertain to discrete events—Plaintiff's arrest and detention by the Officer Defendants and treatment by the Hospital Defendants—with no mention of other events or allegations involving other individuals that could plausibly show a policy or custom that is "permanent and well settled." *Adickes*, 398 U.S. at 167-68; *Gordon*, 6 F.4th at 974 (finding that allegations of random acts or single instances of misconduct are not enough to establish a municipal custom).

14

Thus, Plaintiff fails to state a *Monell* policy, practice, or custom claim against any of the municipal defendants. Nonetheless, the Court grants Plaintiff leave to amend these claims.

### 3. *Supervisory Liability*

Lastly, Plaintiff has failed allege how "the Board of Supervisors, Sheriff, Mayor, City Attorney, City Manager, and Chief of Police" (Dkt. No. 35 at 13) personally participated in the alleged deprivation of Plaintiff's constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or implemented a deficient policy that was the moving force of the alleged constitutional violation. *See Hansen*, 885 F.2d at 646. Thus, any claims against these supervisory defendants must be dismissed. Plaintiff is advised to exclude claims against these supervisory defendants in any amended pleading.

## II.  **Claims Against Individual Defendants**

### A.  **Excessive Force**

In Count One, Plaintiff asserts that the Officer Defendants "knowingly inflicted physical, emotional, and mental abuse upon Plaintiff when they twisted, pulled his arm, hip tossed, pummel, kick, painfully handcuffed tights, shackled tight, hog tied, for a substantial amount time" "under the circumstances which did not require the use of any force whatsoever." (Dkt. No. 35 at 14.) Plaintiff specifically alleges that during his April 14, 2018 arrest "Defendant Rardin . . . abruptly grabbed Plaintiff by the hand and arm, without cause or warning, and began to twist and pull, inflicting unbearable pain and discomfort." (*Id.* at 6.) After a brief chase, "Defendant Rardin caught up with Plaintiff in the grocery store parking lot of Maxi Foods . . . [and] without cause or warning wrapped both arms around Plaintiff's upper torso and frantically hip tossed Plaintiff, slamming him to the pavement thereafter jumping onto Plaintiff's back and pummeling about his head, neck, face, back, and ribs." (*Id.* at 7-8.)

"Defendant(s) Simmons and Schmitz jumped onto Plaintiff's back and pummelled about his head, neck, face back and ribs" before handcuffing Plaintiff. (*Id.* at 8.) Plaintiff further alleges that he was then transported to RCH where he "informed Defendant Rardin, Ruiz, Carmona, Schmitz, and Chinchilla that he needed to use the restroom," to which "Defendant Chinchilla taunted Plaintiff in reply . . . to 'piss your pants.'" (*Id.* at 9-10.) According to Plaintiff, Defendants Ruiz, Carmona, Schmitz, and Chinchilla subsequently removed Plaintiff from the hospital and "violently knocked Plaintiff to the asphalt, where he was kicked and struck with closed fist, while handcuffs was tighten around Plaintiff's wrist cutting off blood circulation, in addition to being placed in shackles around the ankles also extremely tight, thereafter hog tied as the handcuffs and shackles was connected while Plaintiff lay on his stomach." (*Id.*)

### 1. Legal Standards

"Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Such excessive-force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation and citations omitted). Factors such as the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting may bear on the reasonableness (or unreasonableness) of the force used. *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022) (quoting *Kingsley v. Hendrickson*, 576

U.S. 389, 397 (2015)). "The most important factor is whether the suspect posed an immediate threat." *Id.* (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)). This analysis is not static, and the reasonableness of force may change as the circumstances evolve. *Id.* (citing *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017)).

### 2. Analysis

Liberally construing the allegations in the FAC and in light of the legal standard outlined above, the Court finds that Plaintiff states a cognizable claim for excessive force. Plaintiff alleges that each of the Officer Defendants was either actively involved in the use of force against Plaintiff or failed to intervene during the use of force. *See Said v. County of San Diego*, No. 12cv2437-GPC(RBB), 2014 U.S. Dist. LEXIS 7372, at *11 (S.D. Cal. Jan. 21, 2014) (finding that plaintiff stated a claim for excessive force by alleging that one officer "proceeded to assist [the other officer] and both used excessive force to effectuate the arrest"). Thus, Plaintiff's claims against these individual officers may proceed.

### B. Deliberate Indifference

In Count Two, Plaintiff asserts that the Officer Defendants and Hospital Defendants "violated the Fourth and Fourteenth Amendment(s) to be protected from unreasonable search and seizure in the form of deliberate indifference to serious medical needs during arrest or the detention." (Dkt. No. 35 at 15.) Plaintiff alleges that he "made aware his kidney and neurological condition to Defendant nurse Jane Roe #1, and Dr. Christensen failed and refused to provide Plaintiff with necessary medical equipment, inter alia, i.e., a urinal but cleared Plaintiff medically." (*Id.* at 10.) "Plaintiff also informed Defendant Rardin, Ruiz, Carmona, Schmitz, and Chinchilla that he needed to use the restroom," to which "Defendant Chinchilla taunted Plaintiff in reply . . . to 'piss your pants.'" (*Id.*)

*1. Legal Standards*

"The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest medical care to an arrestee." *Est. of Loflin v. City of Huntington Beach*, No. 8:24-cv-01075-JVS-JDE, 2024 U.S. Dist. LEXIS 194643, at *5 (C.D. Cal. Oct. 24, 2024); *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006)) ("[S]uspects have a Fourth Amendment right to 'objectively reasonable post-arrest [medical] care' until the end of the seizure."). This requires officers to "seek the necessary medical attention for... [an arrestee] when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Tatum*, 441 F.3d at 1099 (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). They are not, however, "required to provide what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum*, 441 F.3d at 1098.

The Fourteenth Amendment provides arrestees with the right "to not have officials remain deliberately indifferent to [their] serious medical needs." *Gibson*, 290 F.3d at 1187 (citation omitted). To prove that the response to an arrestee's medical needs was constitutionally deficient, the arrestee must establish: (1) a serious medical need; and (2) deliberate indifference to that need by the officials. *See id.*; *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992).

To establish a serious medical need, a plaintiff must allege that "the failure to treat [the] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Important factors include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial

pain. . . ." *Id.* at 1059-60 (9th Cir. 1992).

To establish deliberate indifference, a plaintiff must allege facts demonstrating: "(a) a purposeful act or failure to respond to [an arrestee's] pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A complaint that alleges only "inadvertent [or negligent] failure to provide adequate medical care" is insufficient to state a deliberate indifference claim under Section 1983. *Id.* (alteration in original).

### 2. Analysis

At this juncture and despite the previous opportunity to amend his claims, Plaintiff has still not alleged facts sufficient to support viable claims for deliberate indifference to a serious medical need under the Fourth or Fourteenth Amendments. Based on the facts alleged, Defendant Officers[3] transported Plaintiff to Riverside Community Hospital for medical treatment following his arrest, where Plaintiff was seen by Dr. Christensen and Nurse Jane Roe #1. (*See* Dkt. No. 35 at 9-10.) Thus, on its face, the FAC alleges that Defendant officers *did* promptly provide Plaintiff with medical care after his arrest.

As for his claims against Dr. Christensen and Nurse Jane Roe #1, Plaintiff only provides conclusory allegations, with no supporting factual allegations demonstrating—or even suggesting—that either or both of these defendants purposefully failed to respond to Plaintiff's medical needs or that Plaintiff experienced any harm because of any alleged indifference, both of which are essential elements needed to state a cognizable deliberate indifference claim.

---

[3] Plaintiff did not include any facts demonstrating that Sergeant Simmons was involved in the alleged deliberate indifference to his serious medical need. Thus, any deliberate indifference claim against Sergeant Simmons must be dismissed. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (internal citations and quotations omitted) (stating that while "[i]ntegral participation does not require that each [defendant's] actions themselves rise to the level of a constitutional violation[,] . . . it does require some fundamental involvement in the conduct that allegedly caused the violation").

Accordingly, Plaintiff's deliberate indifference claims against the individual defendants must be dismissed.  However, in the interest of justice, Plaintiff is granted leave to amend.

### C.  Prompt Probable Cause Determination

In Count Three, Plaintiff asserts that Officers Rardin and Schmitz and Sergeants Simmons and Chinchilla violated his Fourth and Fourteenth Amendment rights by failing to bring Plaintiff "before a magistrate for a judicial determination of probable cause within forty-eight (48) hours after arrest on [April 14, 2018]."  (Dkt. No. 35 at 16-17.)

### *1.  Legal Standards*

"The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."  *Gerstein v. Pugh*, 420 U.S. 103, 104 (1975).    In the case of warrantless arrests, the government must obtain a judicial determination of probable cause within forty-eight hours of the arrest.  *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *United States v. Bueno-Vargas*, 383 F.3d 1104, 1107 (9th Cir. 2004).    The Supreme Court has held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."  *McLaughlin*, 500 U.S. at 56.  "[A]bsent extraordinary circumstances, a longer delay violates the Fourth Amendment."  *Powell v. Nevada*, 511 U.S. 79, 80 (1994).  "In evaluating allegations of unreasonable delay, courts must allow 'a substantial degree of flexibility,' being mindful of practical realities, such as unavoidable delays in transportation, handling late night bookings where no magistrate is readily available, and obtaining the presence of an arresting officer who might have other duties."  *Brainerd v. County of Lake*, No. C-07-02663 EDL, 2008 U.S. Dist. LEXIS 59681, at *25 (N.D. Cal. Aug. 6, 2008) (quoting *McLaughlin*, 500 U.S. at 56).

20

### 2. Analysis

In the FAC, Plaintiff alleges that he was arrested without a warrant on April 14, 2018 and transported to a detention center on April 15, 2018. (Dkt. No. 35 at 6, 10.) Plaintiff alleges that he was not brought before a magistrate for a probable cause determination until April 18, 2018, more than 48 hours after his arrest. (*Id.* at 12.) These allegations ostensibly support a claim that Plaintiff's probable cause determination before a magistrate was untimely. Thus, for pleading purposes, Plaintiff has adequately stated a claim for violation of his rights under the Fourth Amendment to be timely brought before a magistrate for a probable cause determination.

### D. Unlawful Search, Arrest, Detention, and Prosecution

In Count Four, Plaintiff asserts that the Officers Rardin and Schmitz violated his Second and Fourteenth Amendment rights because "[t]here was no proper legal basis for Plaintiff's arrest or prosecution for felony possession of a firearm and/or ammunition . . . ." (Dkt. No. 35 at 18.)

### 1. Malicious Prosecution

For malicious prosecution claims under Section 1983, courts borrow the elements from state law. *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citing *Awabdy*, 368 F.3d at 1066). Under California law, a malicious prosecution claim has three elements, "that the prosecution: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." *Id.* In addition to these elements under State law, a malicious prosecution claim under Section 1983 requires the intent to either "deprive a person of equal

protection of the laws" or "subject a person to a denial of constitutional rights."  *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985).

Here, Plaintiff's allegations do not meet these requirements.  Plaintiff alleges that "Defendants' without cause or justification, wrongfully and/or maliciously prosecuted Plaintiff by charging him with felony resisting arrest in an attempt to cover up their own wrongdoing." (Dkt. No. 35 at 17.)  Plaintiff further alleges that the "aforesaid charge of felony resisting obstructing governmental administration was terminated in favor of Plaintiff."  (*Id.*)  These allegations are wholly conclusory and do not offer any facts to support an inference that a prosecution was brought without probable cause or that any of the defendants acted with the requisite malice.  Thus, Plaintiff's claims are dismissed with leave to amend.

### 2. Unlawful Search, Arrest, and Detention

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  To determine whether a plaintiff can maintain a claim for unreasonable seizure, the Court must determine whether there was probable cause to arrest the plaintiff.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).  "The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense."  *Id.* (internal quotation and alterations omitted).

Plaintiff's allegations supporting this claim are perplexing and contradictory.  Plaintiff avers that his stop and seizure by Officer Rardin was "without cause or warning" (*see* Dkt. No. 35 at 6) but later states his arrest was precipitated by a report that Plaintiff was trespassing and loitering (*see id.* at 8-9) and that he fled from law enforcement after his initial stop, leading to a pursuit before he was apprehended (*id.* at 7).  Additionally, Plaintiff asserts that "[t]here was

no proper legal basis for Plaintiff's arrest or prosecution for felony possession of a firearm and/or ammunition" (*id.* at 18) but also states that "Plaintiff sought to avoid drawing his weapon" as he fled the scene of his stop (*id.* at 7) and that "Defendant Schmitz seized a firearm from about Plaintiff's waist" during his arrest (*id.* at 8).

Plaintiff has not adequately stated a claim because the Court cannot deduce from the facts alleged that Plaintiff's search, arrest, and resulting detention were unlawful. Nevertheless, because Plaintiff may be able to provide clarifying facts surrounding this claim, the Court grants Plaintiff the opportunity to amend.

    *3.* Heck *Bar*

"A civil rights complaint under § 1983 cannot proceed when 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Barber v. Bremerton Police Dep't*, No. 3:24-cv-05618-BHS-DWC, 2024 U.S. Dist. LEXIS 157989, at *6 (W.D. Wash. Sept. 3, 2024) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). "Even where a civil-rights plaintiff merely wishes to pursue damages and does not seek to challenge the legality of his conviction, *Heck* still requires the Court to consider whether a favorable decision would call into question the validity of his state-court conviction." *Id.* "The critical question under *Heck* is a simple one: Would success on the plaintiff's § 1983 claim 'necessarily imply' that his conviction was invalid?" *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 643 (9th Cir. 2018) (quoting Heck, 512 U.S. at 487).

Here, Plaintiff alludes to criminal proceedings following his arrest. (*See* Dkt. No. 35 at 17.) However, it is unclear from the facts alleged in the FAC whether Plaintiff has any conviction associated with his allegedly unlawful arrest. If Plaintiff has such a conviction,

23

Plaintiff's claim is likely barred by *Heck* and may not be pursued under Section 1983 unless Plaintiff can demonstrate the conviction has been invalidated. *See Guerrero v. Gates*, 442 F.3d 697, 703-05 (9th Cir. 2006) (finding that the plaintiff's claims alleging wrongful arrest and malicious prosecution could not be brought under Section 1983 because the claims rested on the idea that the plaintiff was "innocent of the crimes for which he was convicted").

In any amended pleading, Plaintiff must either omit this claim or provide factual allegations addressing any criminal conviction resulting from the alleged arrest.

### III.    <u>Leave to Amend</u>

Although the Court has identified numerous deficiencies with the FAC, it is not "absolutely clear" to the Court that further amendment of Plaintiff's pleading would be futile. *See Akhtar*, 698 F.3d at 1212 (finding that when a *pro se* complaint fails to state a claim, the court must give the *pro se* litigant leave to amend the complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). Thus, the Court grants Plaintiff leave to amend. *See Gonzalez*, 759 F.3d at 1116 ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend, [a]nd the district court's discretion in denying amendment is particularly broad when it has previously given leave to amend."). Nevertheless, because Plaintiff has already had the opportunity to amend, and this matter has been pending in the screening stage for almost two years, this will be Plaintiff's final opportunity to amend his pleading.

\\
\\
\\
\\
\\

**CONCLUSION**

For the reasons stated above, the FAC is dismissed **with leave to amend**.  If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Second Amended Complaint.  In any amended complaint, Plaintiff shall cure the defects described above.

**Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original Complaint.**  Further, the Second Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Second Amended Complaint" and the case number assigned to this action.  **It shall not refer in any manner to Plaintiff's earlier pleading,** and claims that are not expressly included in the Second Amended Complaint shall be deemed abandoned.  Plaintiff is strongly encouraged to utilize the Central District's standard civil rights complaint form for any amended complaint.

In any amended complaint, **Plaintiff may not rely on conclusory allegations and formulaic recitations of applicable law**.  Plaintiff shall also make clear the nature and grounds for each claim, specifically identify the defendants he maintains are liable for that claim, and clearly and concisely explain the factual and legal basis for their liability. Additionally, any claim brought against municipalities or individual defendants in their official capacities must allege that a constitutional violation was committed pursuant to a specific policy or a longstanding practice or custom.

**Plaintiff is admonished that his failure to timely comply with this Order will result in a recommendation of dismissal.  If Plaintiff no longer wishes to pursue this action, in whole or in part, he may voluntarily dismiss it, or any portion of it, by filing a signed**

document entitled "Notice of Dismissal" in accordance with Federal Rule of Civil Procedure 41(a)(1).

DATE: March 17, 2025

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.